UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| PAUL A. MITCHELL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 CV 50015 |
| | ) | Magistrate Judge Iain D. Johnston |
| CAROLYN COLVIN,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Paul A. Mitchell brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for benefits under Title II (Disability Insurance Benefits or "DIB") and Title XVI (Supplemental Security Income or "SSI") of the Social Security Act ("SSA"). This matter is before the Court on cross-motions for summary judgment.

Mitchell argues that the Commissioner's decision denying his applications for benefits should be reversed or remanded for further proceedings because the Administrative Law Judge ("ALJ") conclusorily found he did not meet a Listing, erred in determining his residual functional capacity by failing to analyze what weight to give the report of his treating physician, failed to incorporate the limitations even the state agency doctors noted, failed to account for his obesity, mental disorders, and medications, and failed to properly assess his credibility. The Commissioner argues that the ALJ's decision should be affirmed because the ALJ did not err. For the reasons set forth more fully below, Mr. Mitchell's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is remanded.

---

[1] Pursuant to Federal Rules of Civil Procedure 25(d), we have substituted Carolyn W. Colvin for Michael J. Astrue as the appellee.

# I. BACKGROUND

A. **Procedural History**

Mr. Mitchell filed concurrent applications for disability on July 10, 2007, alleging a disability onset date of June 23, 2007, due to post myocardial infarction with stent replacement. R. 161-168. The applications were denied initially on November 9, 2007, (R. 49-53) and upon reconsideration on January 17, 2008 (R. 58-65). The Claimant filed a timely request for a hearing on February 4, 2008. R. 66-67. Administrative Law Judge David W. Thompson conducted the hearing on June 15, 2010, at the Rushville Treatment and Detention Facility, where Mr. Mitchell was being detained as a sexually dangerous person. R. 10. The ALJ informed Mr. Mitchell of his right to representation, but Mr. Mitchell testified without the assistance of an attorney or other representative. *Id.* Impartial vocational expert Randall Harding also testified at the hearing. *Id.*

On July 22, 2010, the ALJ issued a decision denying the claims for benefits. R. 10-23. On September 1, 2010, Mr. Mitchell filed a timely request to review the ALJ's decision. R. 5-6. On December 28, 2010, the Appeals Council denied the review, making the ALJ's decision the final decision of the Commissioner. Mr. Mitchell then filed this appeal. *See* 42 U.S.C. § 405(g).

B. **Hearing Testimony**

  1. *Mr. Mitchell*

Mr. Mitchell testified that he was fifty-seven years old, stood six feet tall, and weighed three-hundred pounds. R. 27. He did not complete the tenth grade, but later obtained his GED. R. 28. He previously worked as a case aide and as a janitor. R. 28, 30, 34-35. He testified that the medications he takes include niacin, potassium, Metoprolol, Simvastatin, Lasix, and

Coumadin.  R. 28.  Although they are effective, he testified that some of the medications leave him "sleepy and groggy."  R. 29.

Mr. Mitchell testified that he is unable to stand very long or walk very far, and is unable to lift more than fifteen to twenty pounds, has trouble pushing things, and cannot climb more than eight steps without taking a break.  R. 29-31.  He also needs breaks while engaging in personal hygiene such as bathing, dressing, and eating.  R. 31.  Mr. Mitchell testified that he also has poor social skills that leave him unable to handle large crowds, R. 38, and that he suffers a bipolar disorder that adversely affects his functioning because one minute he can be fine but the next minute he can become "mean and aggressive," R. 41.

### 2. *Vocational Expert*

The vocational expert testified that Mr. Mitchell's prior job as a case aide was classified as semi-skilled and light, and that his prior job as a janitor was semi-skilled and medium.  R. 35.  In response to a hypothetical posed by the ALJ asking about a person of the same age, education and work experience as Mr. Mitchell, and limited to light work and occasional climbing of ladders, ropes and scaffolds, the vocational expert testified that these limitations would eliminate work as a janitor but would not eliminate work as a case aide.  R. 35-36.  When the ALJ changed the hypothetical to include a limitation to sedentary work or to only occasional contact with the public, co-workers, and supervisors, work as a case aide would also be eliminated.  R. 36, 39.  When the ALJ added the limitation that the hypothetical employee would be less than 80% productive, the vocational expert testified that there would be no available work in the economy (it is not clear from the testimony whether the limitation applied to light work, sedentary work, or both).  R. 37.

**B. Medical Evidence**

On June 23, 2007, Mr. Mitchell went to the emergency room at Swedish American Hospital complaining of chest pain. R. 495. An EKG revealed an acute myocardial infarction, and he was admitted for an angioplasty and placement of a stent in the right coronary artery. R. 495-96, 507-09. The procedures resolved his chest pain and he was discharged the following day. R. 496.

Mr. Mitchell returned to the hospital on June 26, 2007, complaining of a bruise on his right groin. R. 510. Emergency room doctors discovered he had developed a pseudoaneurysm in his right femoral artery, which they treated with thrombin and ablation. R. 516.

On July 4, 2007, Mr. Mitchell again returned to the emergency room complaining of shortness of breath. *Id.* A CT scan revealed a pulmonary embolism in his right lower lobe area and doctors also discovered a low platelet count. They admitted him, treated him with heparin, started him on Coumadin, and discharged him on July 9, 2007, when his platelet count came into therapeutic range. R. 517.

On October 6, 2007, after Mr. Mitchell applied for benefits and at the request of the SSA, Dr. Kamlesh Ramchandani examined Mr. Mitchell. Dr. Ramchandani noted Mr. Mitchell's complaints of shortness of breath and chest pains that continued after the myocardial infarction, including chest pains two to three times a day that last for two to sixty minutes after physical exertion like walking a half block, using stairs, lifting ten to fifteen pounds, or cleaning his house for ten to fifteen minutes. R. 624. He also noted Mr. Mitchell's reports of pain in his knees, hips, lumbar spine and hands, that he is obese, and that a recent stress test was negative for ongoing ischemic changes. R. 624-25. Dr. Ramchandani concluded that Mr. Mitchell suffered

from coronary artery disease with atypical chest pains, dyspnea[2] most likely related to ischemic cardiomyopathy, though obesity may be a contributing factor, and polyarthralgia[3] also possibly related to obesity. R. 625.

On October 9, 2007, psychiatrist Dr. Gerald Hoffman met with Mr. Mitchell at the request of the SSA. R. 628-30. According to Dr. Hoffman's report, Mr. Mitchell was incarcerated at the time and worked as a dishwasher. R. 628. Mr. Mitchell reported that before his incarceration, he spent his time mopping, cleaning, and scrubbing floors in his apartment, doing laundry, and took the bus to visit his parole officer, attend sex therapy counseling once a week, and attend drug and alcohol counseling twice a week. R. 629. Mr. Mitchell also described visiting with family members twice a month at his house as well as trips to his brother and sister's homes to do unspecified work and small repairs. *Id.* Dr. Hoffman diagnosed Mr. Mitchell with pedophilia and noted he was on Chronic Sex Offender Status with the Illinois Department of Corrections, and had a history of alcohol and cannabis dependence and adjustment disorder with anxiety and depression secondary to the life limitations imposed by his sex offender status and his guilt and shame. *Id.*

On October 16, 2007, Mr. Mitchell's physician, Dr. William Baxter, completed a Cardiac Report at the request of the SSA. R. 631-35. Dr. Baxter reported that he had last examined Mr. Mitchell on October 16, 2007, that Mr. Mitchell suffered a myocardial infarction on June 23, 2007, was diagnosed with coronary artery disease on July 4, 2007, that he did not have a history of congenital heart disease, a chest x-ray from July 25, 2007, produced normal results, and that Mr. Mitchell should be off work except for light duty work four hours a day for four days a

---

[2] Dypsnea is shortness of breath. STEDMAN'S MEDICAL DICTIONARY at 601 (28th ed. 2006)
[3] Arthralgia is pain in a joint. *Id.* at 159.

week. R. 631, 633. Dr. Baxter also reported that Mr. Mitchell would need frequent breaks due to fatigue. *Id.*

On October 24, 2007, psychologist Dr. Donald Henson reviewed the record and found that Mr. Mitchell's affective disorder, personality disorder, and substance addictions did not constitute a severe impairment, but did not take into account Mr. Mitchell's non-mental impairments. R. 636-49.

On November 2, 2007, Dr. Charles Kenney reviewed Mr. Mitchell's file at the request of the SSA and completed a Physical Residual Functional Capacity Assessment. He found that Mr. Mitchell was limited to occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking for six hours in an eight hour work day, sitting for six hours in an eight hour work day, unlimited pushing and pulling, and the occasional ability to climb ladders, ropes, or scaffolds. R. 670-71.

Dr. Towfig Arjmand also reviewed Mr. Mitchell's file and on January 16, 2008, concurred in Dr. Kenney's findings. R. 713.

On October 25, 2009, Dr. Sreehari Patibandla, a psychiatrist at the Illinois River Correctional Center, completed a Mental Health Treatment and Diagnostic report after meeting with Mr. Mitchell. R. 1281. According to the report, Mr. Mitchell had been compliant with his mental health medications, denied any depression or suicidal thoughts, was functioning well, that his medications caused no side effects, and that Mr. Mitchell asked to be weaned off his medications prior to being released from custody. *Id.*

**C.    ALJ's Decision**

First, the ALJ found that Mr. Mitchell met the insured status requirements of the SSA through March 31, 2009. R. 16. Second, he found that Mr. Mitchell had not engaged in

substantial gainful activity since June 23, 2007, the alleged onset date. *Id.* Third, the ALJ found that Mr. Mitchell's cardiac condition, specifically his myocardial infarction followed by stent placement, was a severe impairment, and that his mental impairment of sexual deviation was nonsevere. *Id.* Fourth, the ALJ found that Mr. Mitchell's severe impairment did not meet or equal one of the listed impairments. R. 18-19. Fifth, the ALJ found that Mr. Mitchell had the following residual functional capacity: light work limited to occasional use of ropes, ladders and scaffolds. R. 19. In doing so the ALJ found that any limitations that Mr. Mitchell described beyond those were not credible. R. 20. Finally, the ALJ found that Mr. Mitchell's residual functional capacity made him able to resume his past work as a case aide and, therefore, Mr. Mitchell was not disabled from the alleged onset date of June 23, 2007, through the date of decision. R. 22.

## II. LEGAL STANDARDS

### A. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This much is clear regarding the standard of review. If supported by substantial evidence, the Commissioner's factual findings are conclusive. 42 U.S.C. § 405(g). If the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision, reviewable by the district court. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). But beyond these axiomatic statements, the courts have provided seemingly conflicting guideposts.

At one end of the spectrum, court opinions have held that the standard of review is narrow. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (review is "extremely limited"). The district court's review is limited to determining whether substantial evidence supports the

Commissioner's decision and whether the Commissioner applied the correct legal standard in reaching the decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence exists if there is enough relevant record evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, on review, the courts will give the decision a commonsensical reading and not pick nits. *Rice v. Barnhart*, 389 F.3d 363, 369 (7th Cir. 2004). Moreover, a decision need not provide a complete written evaluation of every piece of testimony and evidence. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). If reasonable minds could differ concerning whether a claimant is disabled, then the court must affirm so long as the decision is adequately supported. *Elder*, 529 F.3d at 413.

At the other end of the spectrum, courts, including the Seventh Circuit, have been careful to emphasize that the review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). For example, a "mere scintilla" is not substantial evidence. *Id.* Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the

evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).[4] And, unlike most civil litigation in which a decision can be affirmed on any basis in the record, federal courts cannot do so in Social Security appeals. *Compare Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("[T]he *Chenery* doctrine . . . forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") *with Brosted v. Unum Life Ins. Co.*, 421 F.3d 459, 467 (7th Cir. 2005) ("[W]e can affirm on any basis in the record"). Therefore, the Commissioner's counsel cannot build for the first time on appeal the necessary accurate and logical bridge. *See Parker*, 597 F.3d at 925; *Toft v. Colvin*, 2013 U.S. Dist. LEXIS 72876, *21 (N.D. Ill. 2013) ("[T]he court's review is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rational submitted in the Commissioner's brief."). An exception to the *Chenery* doctrine is the harmless-error doctrine, which allows a court to affirm if the outcome on remand is foreordained. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."); *see Osmani v. INS,* 14 F.3d 13, 15 (7th Cir. 1994) (harmless error does not require remand "when it is clear what the agency's decision has to be"); *Sahara Coal Co. v. Office of Workers' Compensation Programs*, 946 F.2d 554, 558 (7th Cir. 1991); *see also Parker*, 597 F.3d at 924. The harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand. *McKinzey*, 641 F.3d at 892.

---

[4] To further show the seeming conflict, scores of cases rely upon the "logical bridge" analysis and language to remand decisions to the Commissioner. *See, e.g. Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). But the "logical bridge" analysis was never meant to compel a hypercritical approach. *Mueller v. Astrue*, 860 F.Supp.2d 615, 619 (N.D. Ill. 2012). Indeed, the Seventh Circuit has provided the following pedestrian explanation of how an ALJ's decision establishes a logical bridge: "[T]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

## B.     Disability Standard

Disability insurance benefits are available to a claimant who can establish that he is under a "disability" as defined in the SSA. *Liskowitz v. Astrue*, 559 F.3d 736, 739-740 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education and work experience, participate in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is work usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 404.1572(b).

The ALJ uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i – v). Under this analysis, the ALJ must inquire in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's severe impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; meaning whether the claimant can still work despite the claimant's physical and mental limitations, which is referred to as the claimant's residual functional capacity; and (5) whether the claimant is capable of performing work in light of the claimant's age, education and work experience. *Id.*; *see also Liskowitz*, 559 F.3d at 740. After the claimant has proved that he cannot perform his past relevant work due to the limitations, the Commissioner carries the burden of showing that a significant number of jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

In his appeal, Mr. Mitchell asks the Court to reverse the denial of benefits and remand for further proceedings based on five errors by the ALJ. Specifically, he argues that the ALJ erred in the following ways: (1) he never addressed the report of treating physician, Dr. Baxter; (2) he disregarded without explanation the limitation of no standing and/or walking or sitting more than six hours in an eight hour day that the state agency doctors found; (3) he failed to incorporate into the residual functional capacity the limitations presented by Mr. Mitchell's obesity, mental disorders, and the side effects of his medications; (4) he made only a conclusory determination that Mr. Mitchell did not meet a Listing; and (5) he did not properly assess Mr. Mitchell's credibility.

### A.  Treating Physician

Mr. Mitchell argues first that the ALJ's decision denying him benefits must be reversed because the ALJ did not properly weigh the report of his treating physician Dr. Baxter. At Step Four of his analysis, the ALJ acknowledged the report and opinion of Dr. Baxter as follows:

> Cardiac report by William Baxter, D.O., dated October 16, 2007 indicates the claimant had no evidence of congenital heart disease, arrhythmia or neurological complications. Mr. Mitchell was 6 feet tall and weighed 300 pounds. The doctor noted symptoms of fatigue, dyspnea and angina discomfort, and he considered the claimant to be limited to light duty work up to 4 hours per day, 4 days per week. The doctor stated that Mr. Mitchell required frequent breaks due to fatigue. Chest x-ray dated July 25, 2007 was normal (Exhibit 12F/).

R. 18. But the ALJ never again mentions the report of Dr. Baxter, and the ALJ's residual functional capacity determination did *not* limit Mr. Mitchell to work up to four hours a day, four days a week with frequent breaks due to fatigue.

A treating physician's report is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014). An ALJ is not entitled to simply favor other medical evidence over

the report of the treating physician but, rather, must provide good reasons for discounting the treating physician's opinion. *Id.* Here, the ALJ did no more than acknowledge that Dr. Baxter's report existed. He did not review whether it was supported by the medical record or consistent with other substantial evidence. Indeed, he engaged in no analysis of the opinion at all, and therefore did not provide good reasons for giving it less than controlling weight.

Even if the ALJ had established why Dr. Baxter's opinion was not entitled to controlling weight, the ALJ needed to determine what weight to give it. Under SSA regulations,

> When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.

20 C.F.R. § 404.1527(c)(2). Paragraphs (c)(2)(i), (c)(2)(ii) and (c)(3) through (c)(6) are often referred to as the "checklist," and identify the following factors that an ALJ *must* examine when determining the weight to give a treating physician's opinion if not given controlling weight: (1) the length of the treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i), (c)(2)(ii), (c)(3)-(c)(6); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (referring to regulations as a "required checklist").

In response the Commissioner does not challenge Mr. Mitchell's argument that Dr. Baxter was a treating physician or that the ALJ failed to assess the relationship between Dr. Baxter and Mr. Mitchell to determine the weight to which Dr. Baxter's opinion was entitled. Rather, the Commissioner argues any errors are of no moment because the ALJ properly rejected "a very similar opinion from approximately the same time frame." Response [30] at 11. That allegedly similar opinion actually appears to be two opinions offered to the Township of

Rockford in response to Mr. Mitchell's application for township assistance. In the first dated November 9, 2007, a physician from Rockford Cardiology whose signature is illegible opined that Mr. Mitchell could work two to four hours per day two to four days per week, R. 1302, followed by a report dated December 4, 2007, that Mr. Mitchell could work four hours a day four days a week, R. 1303. Both reports contained the opinion that Mr. Mitchell would be able to return to work with proper medical treatment, but did not specify when. R. 1302, 1303. The ALJ did "not give controlling weight" to the first, did not address the weight due the second, but determined based on the second that there was no evidence Mr. Mitchell would remain unable to work for more than twelve months. R. 21-22. The second was signed by a Dr. Baxter, a fact not noted by the ALJ or the parties in their briefs, nor is it clear from the record whether this is the same Dr. Baxter. R. 1303.

This rationale justifying the ALJ's decision is unavailing for two reasons. First, it is not a reason given by the ALJ for failing to address the weight due Dr. Baxter's October 16, 2007, opinion that Mr. Mitchell would require frequent breaks due to fatigue. *Toft*, 2013 U.S. Dist. LEXIS 72876, *21 ("[T]he court's review is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rational submitted in the Commissioner's brief."). Second, the opinions are not identical. Specifically, although the October 16, 2007, report by Dr. Baxter and the December 4, 2007, report to the Township of Rockford both opine that Mr. Mitchell can work four hours a day four days a week, only the township report goes on to find that Mr. Mitchell could return to work with proper medical treatment at some unspecified date. The ALJ did not compare the two, find them to be identical, or explain why how the second supported his conclusion that Mr. Mitchell's limitations would not exceed twelve months. Indeed, when questioned what treatment would allow Mr. Mitchell to return to work, the

December 4, 2007, report appears to respond "No," but the ALJ did not assess whether that response contradicted the statement a line above that Mr. Mitchell could return to work with treatment. The ALJ also cited Mr. Mitchell's work as a janitor in March 2008 as further evidence that he would resume the ability to work within twelve months of the June 23, 2007, onset date, but never elicited from him the work he performed, hours he kept, or the frequency of his breaks. R. 30.

In short, by failing to determine whether Dr. Baxter's opinion was entitled to controlling weight or, if not, to what weight it was entitled, and by failing to explain why he accepted one report's conclusion that Mr. Mitchell could return to work after treatment over Dr. Baxter's October 16, 2007, opinion that Mr. Mitchell would need frequent breaks due to fatigue, the ALJ failed to build a logical bridge between the medical evidence and his conclusion that Mr. Mitchell could return to work as a case aide. The failure to address evidence of fatigue is critical because according to the vocational expert's testimony, if Mr. Mitchell was only 80% productive it could impact his ability to work at all. R. 37. Accordingly, the failure to properly address Dr. Baxter's opinion was error and requires that the ALJ's decision be reversed and remanded for further consideration of Dr. Baxter's opinion. *Clifford v. Apfel*, 227 F.3d 863, 870-71 (7th Cir. 2000) (reversing and remanding because the ALJ failed to determine whether the treating physician's findings were entitled to controlling weight). Because the ALJ's decision must be reversed and remanded based solely on the ALJ's failure to properly assess Dr. Baxter's opinion, the Court will only briefly review the remaining bases offered by Mr. Mitchell for overturning the decision.

B.  **Standing/Walking/Sitting Limitations**

Mr. Mitchell contends that the ALJ's decision must also be reversed because he did not offer a reason for rejecting the restrictions noted by the state agency doctors, specifically, the restriction that he could stand, walk and sit for only about six hours in an eight-hour workday. Mr. Mitchell argues that the ALJ's determination that he could perform light work with no more than occasional use of ropes, ladders and scaffolds fails to account for the limitations on standing, walking, and sitting. However, light work includes the limitation of being able to stand, walk and sit for six hours in an eight-hour work day. *See* SSR 83-10 (light work requires the ability to stand and/or walk six hours in an eight hour work day, while sedentary work requires the ability to sit for six hours in an eight-hour work day); *Kimak v. Colvin*, No. 12 CV 7292, 2014 WL 1758638, at *9 (N.D. Ill. May 2, 2014). Accordingly, the ALJ did not adopt a residual functional capacity at odds with the opinions of the state agency doctors.

C.  **Limiting Effects of Obesity, Mental Disorders, and Fatigue Caused By Medications**

Next, Mr. Mitchell argues that the ALJ erred by adopting a functional residual capacity that did not account for his obesity, mental disorders, and the sleepiness his medications cause. At the hearing, Mr. Mitchell testified that he cannot stand for long, cannot walk long distances, cannot push, that his medications leave him sleepy, that he needs breaks when climbing stairs or tending to his personal hygiene, and that his mental conditions affect his functioning, including his bipolar disorder that results in mood swings. These limitations were at least partially supported by medical evidence including Dr. Ramchandani's October 6, 2007, report that Mr. Mitchell's obesity may be contributing to his dyspnea and polyarthralgia, R. 625, Dr. Baxter's October 16, 2007, report that Mr. Mitchell was easily fatigued and limited to working four days a week for four hours a day, R. 631, 633, Dr. Hoffman's report that Mr. Mitchell suffers an

adjustment disorder with anxiety and depression secondary to the life limitations imposed by his sex offender status and his guilt and shame, R. 629, and Dr. Henson's report that Mr. Mitchell exhibits affective disorder, personality disorder, and is bipolar, R. 636, 648.

Mr. Mitchell argues that the ALJ's residual functional capacity of light work limited only to the occasional use of ropes, ladders and scaffolds does not account for any restrictions based on obesity, mental disorders, or fatigue. Although the ALJ engaged in a lengthy analysis of whether Mr. Mitchell's sexual deviancy constituted a severe impairment, he did not adequately determine whether his nonsevere impairments affected his ability to work. *See Lamont v. Astrue*, No. 09 CV 1640, 2012 WL 929616, at *19 n.27 (N.D. Ill. Mar. 19, 2012) ("In assessing Plaintiff's [residual functional capacity], the ALJ must consider both severe and nonsevere impairments."). Mental conditions that create "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting" may impact the ability to work and the ALJ must take them into account. 20 C.F.R. 404.1545(c); *Richards v. Astrue*, 370 Fed. Appx. 727, 732-33 (7th Cir. 2010) (ALJ erred by not accounting for the impact of the claimant's depression and irritability on her ability to respond to supervisors, co-workers and work pressures). Likewise, obesity that alone is not severe must nevertheless be considered in combination with a claimant's other medical conditions to determine whether the claimant's ability to work is impacted. *See Goins v. Colvin*, --- F.3d ---, No. 13-3729, 2014 WL 4073108 (7th Cir. Aug. 19, 2014).

Rather than explicitly address each of these conditions, the ALJ generally found that any limitations greater than those adopted in the residual functional capacity were unsupported by the record because the evidence showed that (1) Mr. Mitchell "was living independent," and (2) he had "the ability to function in a work-setting while around other people" because "he engaged in

part-time work as a janitor." R. 21. However, the Seventh Circuit has cautioned against placing undue weight on a claimant's household activities when determining his ability to hold a job. *See Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ."). The ALJ did not ask Mr. Mitchell to elaborate on the kind of household tasks he performed at the homes of his brother and sister. Likewise, the ALJ did not ask Mr. Mitchell for details about his work as a janitor, including the hours he worked and whether others were around at the time he cleaned. As a result, the record is unclear about the nature of the work he performed, his interactions with others on the job, undermining the ALJ's conclusion that Mr. Mitchell's activities demonstrated an "ability to function in a work-setting while around other people." R. 21.

The Court need not determine whether the ALJ's lack of explicit discussion about any limitations imposed by Mr. Mitchell's obesity, mental conditions, and fatigue by itself warrants a remand because the case is already being remanded for failure to address the weight due the report of Mr. Mitchell's treating physician. On remand, the ALJ will be free to further explore the limitations imposed by the combination of conditions from which Mr. Mitchell suffers.

**D.     Listing**

Next, Mr. Mitchell argues that the ALJ "wholly failed to describe any of the rationale or evidence used to support his contention that Plaintiff failed to meet Listing 4.04." Memorandum [26] at 12. However, as the Commissioner pointed out in response, in finding that Mr. Mitchell did not meet Listing 4.04 the ALJ relied on Dr. Baxter's report of "no evidence of congenital heart disease, arrhythmia or neurological complications," that his chest x-ray was normal, and

that "[e]chocardiogram testing on 6/23/2007 identified ejection fraction of 55%." R. 18. Thus, the ALJ's decision is unlike the decision in the case Mr. Mitchell cites, *Brindisi v. Barnhart*, 315 F.3d 783, 786-77 (7th Cir. 2004), where the ALJ merely found that the claimant did not meet a Listing without even identifying the Listings considered.

Moreover, Mr. Mitchell does not explain how the ALJ's finding that he did not meet a Listing is inconsistent with the medical evidence, or point to any evidence that he met a Listing. The burden falls on the claimant to establish that he meets a Listing. *Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009). Mr. Mitchell has not argued that the ALJ failed to fully develop the record, and has identified no evidence the ALJ missed. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (to establish that ALJ failed his duty to develop a full and fair record, claimant must identify the specific facts the ALJ did not consider). Therefore, Mr. Mitchell has failed to establish any error requiring a remand on this issue.

**E.     Credibility**

Finally, Mr. Mitchell argues that the ALJ erred by finding that the limitations Mr. Mitchell described were not credible in light of the other evidence. Specifically, he argues that the ALJ employed only boilerplate language that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment," language repeatedly criticized by the Seventh Circuit. *See, e.g.*, *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). The Commissioner responded with citations to the ALJ's decision where he relied on evidence of the plaintiff's "significant activities" including his help on projects at his sibling's homes and his work as a janitor to support the conclusion that Mr. Mitchell's description of his

own limitations was not credible. Response [30] at 13-14 (citing to R. 20). Mr. Mitchell dropped this argument in his reply brief.

Without deciding whether Mr. Mitchell abandoned his argument about credibility, the Court notes the Seventh Circuit's warnings against relying upon a claimant's household activities to find that his testimony about his ability to work is not credible. *Beardsley*, 758 F.3d at 838. As noted above, the ALJ did not ask Mr. Mitchell to describe the work he performed at his siblings or as a janitor and, therefore, the record is not clear whether those activities are inconsistent with the limitations Mr. Mitchell described about his ability to stand, walk, his ability to function around others, and his fatigue. Because the case is being remanded, the ALJ will be free to further explore Mr. Mitchell's credibility in light of the record overall.

## IV. CONCLUSION

For the reasons given, the plaintiff's motion for summary judgment [25] is granted, the government's motion for summary judgment is denied, and the case is remanded to the Commissioner for further proceedings consistent with this order. Because the case is being remanded for further proceedings on the issue of whether Mr. Mitchell is entitled to benefits, the Court has no occasion to address the issue raised earlier about the impact of Mr. Mitchell's continuing detention on his ability to receive any benefits owed. *See, e.g.*, Dkt. 58.

Date: September 19, 2014        By: _____
                                                      Iain D. Johnston
                                                      United States Magistrate Judge